The next matter, number 21-1665, Rosie Kanal Singh v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, Your Honor. Steve Guthers, Rosie Singh Kanal, petitioner in this matter. Good morning. If I may, I would like to reserve two minutes for rebuttal. You may. Thank you. May I commence? Thank you. Rosie Kanal Singh is a native and citizen of Nepal who applied for political asylum within one year of her arrival into the United States. She presented her asylum case before an immigration judge in Boston. Counsel, I don't mean to be rude, but we know the facts of the case, we know the procedural history. Why don't you get to the issues that are before us? That's fine, Your Honor. Thank you. Just quickly, the immigration judge did find that Ms. Singh was credible. The main issue before you as the Board of Immigration Appeals stated, they adopted the IJs, the immigration judge's determination, that assuming that the respondent did suffer past persecution from the incidents that happened to her and her family, she did not carry her burden to establish that such past persecution was done by individuals or groups that the Nepali government was unable or unwilling to control. That is the key. This Court has determined that those two pieces of unable or unwilling are two separate assessments that must be made. Ironically... Are you arguing that the IJ and the BIA erred by treating the Maoist Party as private parties rather than as government actors for the purposes of analyzing the government in action? Not exactly, Your Honor. What I'm arguing is that the IJ took judicial, the immigration judge, excuse me, took judicial notice of a U.S. Department of State report, human rights report, as to Nepal from 2017. The incidents that occurred to Ms. Singh occurred in 2007. There were two separate incidents, as you know. The Board of Immigration Appeals, well, let me just preface it by saying that, as I say, the incidents happened in 2007. I had asked for judicial notice. For some reason, the judge just took judicial notice of 2017. There was a U.S. State Department report, which I submitted with my brief before the Board of The only thing is that the Board of Immigration Appeals, they did adopt the State Department report of 2007, but all they said was that the Maoists were in the government. They didn't... So the thing is I'm still not clear about the answer to my first question. So are you conceding that the Maoist Party weren't private actors and then asking us to limit our review to the agency's conclusions? They weren't private actors because they were the government. The Maoists controlled the government. It was a coalition government. There was a peace agreement in 2006. So they actually were the government, and the perpetrators, the prosecutors, excuse me, against Ms. Singh as to the incidents her family suffered were individuals who were affiliated with the Maoist Party. They obviously were not in the government, but they were Maoists. They expressed themselves as Maoists, and the record certainly confirms that. The point is is that the 2007 report, which was not addressed by the Board of Immigration Appeals, not only states that the Maoists were a part of the government and helped control the government, but that if you look, it's on the administrative record, page 34. The Maoists closed police offices. A quote from the report, they lacked political backing. Police were reluctant to intervene, particularly against the Maoists. This is a quote from the same page. The Maoists frequently employed arbitrary and unlawful use of lethal force, including torture and abduction. This is all after the Maoists were in the government, and this is when the incidents occurred to Ms. Singh. And just finally, the Maoists, this is a quote also from the same report, the Maoists committed grave human rights abuses. So my point is is that. Excuse me, Counselor. Yes, please. I'm confused. You're citing this 2007 report, but this 2007 report could not have been part of the IJ's findings because it was never introduced before the IJ. That's correct. It was submitted. So it's not part of the record on which he ruled. The BIA then finds that the IJ's finding of not unable or unwilling to control is a factual finding and is not clear error. Now, when we review a determination that the IJ's finding was not clear error, we look to the factual record that was before the IJ, don't we? Well, I don't know if it's a typographical error or not. I'm not talking about typographical error. No, I understand. I'm just talking about what the ordinary procedure is. If a trial court or here an immigration judge makes a finding of fact and a reviewing court, whether it's an intermediate board or whether it's this court, looks to determine whether that finding of fact is or is not clear error, which everyone agrees is the usual standard review, or is supported by substantial evidence in the administrative context, you look to the record that was before the judge who made the finding. Yes, I agree, Your Honor. So I don't understand what the relevance is of a document that was never introduced or submitted before the trial. Let me explain, if I may. Yeah. The immigration judge said that she would take judicial notice of the human rights report from the U.S. Department of State. I had asked for that, and the government agreed for that. That was before the immigration judge. Unfortunately, when the immigration judge said that she would do it, but unfortunately when she did it, the report that she looked at was 2017, 10 years later than the incident. So my point is that, yes, it's a factual finding, but it's not based on actual facts relating to the incident. It seems to me that what that should have produced, and I'm not being hypothetical, that you make an appeal to the BIA, and part of your appeal is that the finding is clear error because it was based on a 2017 report, which had no relevance to the conditions in 2007. Exactly. Did you make that argument to the BIA? On page 8, I referred to what was published in 2008 by the U.S. Department of State. I know you referred to it, but I asked you if you made that argument, if you made the argument to the BIA that it was clear error because of the reliance on the 2017 report, because we can only consider arguments that you make to the BIA on the principles of administrative exhaustion. I believe that I did make that argument. Okay. We'll look at it. So your argument is we can't say that the determination is supported by substantial evidence because the reliance of the trier was on human rights materials that describe conditions from the wrong year, not only the wrong year, but the wrong period, indeed, from a period a decade later. That's correct. And I wasn't able to see that until after the decision was presented to me, so in turn I appealed to the Board of Immigration Appeals, asserting, I don't have it in front of me exactly, I'm going to have it as far as the exact wording, but I did appeal that decision that the Maoists were in the government and they were not protecting people like Ms. Singh because the persecutors were the Maoists themselves and the Maoists controlled the government. I would like to refer to the recent case I'm sure that you've all seen, which was Dahal v. Bar, which is the 2019 case by this Honorable Court, which is a very similar situation. Past persecution was found in that case. In this case it was adopted as if even if it was found, the government was unwilling and unable to control the Maoists because they were in the government. And Dahal is very clear that even as late as 2012, the Maoists were still committing atrocities against those who opposed them. As you know from the record, Ms. Singh and her family were from the Nepalese Congress Party, which is in direct opposition to the Maoists. Dahal talks about the Maoist and key leadership posts, even though there was the peace agreement, which was 2006. The issues here would happen during the incidents in 2007. The government was unable to protect Ms. Singh from persecution. Your position is that the evidence compels a different result? Yes, the underlying evidence compels a different result. The immigration judge decision and the Board of Immigration Appeals decision is not based on substantial evidence. So the I.J. pointed to a particular incident in which the Maoists were attacking the family, but that there was intervention. Yes, there is, yes. And that is pure happenstance because a neighbor who heard all the noise happened to be a member of the Nepalese Army and called the Army, and the Army did come. And before the Army was able to do anything in particular, the Maoists fled. So they were protected, but of course this was after her husband, Ms. Singh's husband, was knocked unconscious. She was knocked unconscious and beaten, et cetera. The second incident, which was two weeks later, was when her 10-year-old son was kidnapped and she was told not to go to the police by the Maoists themselves or there would be dire consequences. And as is held in by cases in this court, including Dahal, I think, but who's juiced over Sessions, which is a 2018 case, 895F3154, the failure to report to the police is not dispositive, it would be futile. And I would think that it would be reasonable that Ms. Singh would not go to the police if the Maoists basically threatened her and said don't go to the police. She was concerned about her only son, who was 10 years old. She was able to secure his release through negotiations from the Nepalese Congress Party. So the second incident, there was no police. And, of course, the second incident happened subsequently, and there was no protection for the family then either. I hope that answers your question. And I'll defer to my brother and reserve my rebuttal. Thank you. Thank you, counsel, at this time. If Attorney for the Respondent would please introduce himself on the record to begin. Good morning. Genal Yusuf for the Attorney General. Your Honors, the court should deny the petition for review. Substantial evidence supports the agency's determination that the petitioner did not meet her burden of proof in establishing eligibility for asylum or withholding of removal. And I think before I get into the merits of the case, the critical framework here is that the substantial evidence standard requires that the record compels reversal of the agency's conclusion, not simply support that conclusion. Secondly, the petitioner had the burden of proof of demonstrating that she was eligible for asylum or withholding of removal. And part of that burden of proof for asylum is to establish persecution. And persecution must be by direct government action, government-sponsored, or in the case of private actors, as in here, that the government was unwilling or unable to protect her from harm. The petitioner did not meet this burden of proof. The record rather shows the government here in the instances in which the first instance in 2007 when the home was invaded by Maoist rebels, the army came on the calling. After being alerted by a retired army veteran, came and rescued the family from the Maoists, causing the Maoists to, I believe, as the petitioner testified, scared off the Maoists. There, the petitioner cannot rely on this instance to demonstrate an unwillingness or inability on the part of the government in order to protect her from harm. And turning to the... And then the Maoists took over. Excuse me? Then the Maoists took over. So the people who were attempting to do her harm at that point took over the government. Well, Your Honor, the petitioner's clearly, before the immigration judge, stated that her claim was based on past persecution. So the petitioner did not even present a claim for persecution on a well-founded fear of future persecution. And so the entirety of the claim, and her counsel stated as much during the proceedings, that was based on those past experiences, those experiences being the home invasion by Maoists and the kidnapping of her son. So... Are you saying, counsel, that the petitioner was not arguing before the IJ and the board that her case for persecution was built on the fact that the Maoists had become, had become government actors? That's right, Your Honor. So in other words, you're saying that argument was not administratively exhausted? I don't believe it was based off. If you look at the fact that the petitioner realizing their failure to demonstrate this was government action based off of the submission of the Human Rights Report to the board on appeal, realizing that they didn't demonstrate or meet their burden of showing that the Maoists were part of the government. If you look at the record, the petitioner, for example, the petitioner herself was asked during the hearing, to paraphrase, Your Honors, were these individuals part of the government? She said no. The petitioner's father-in-law submitted a declaration referring to these individuals as terrorists and gang members. The police report, I believe a letter by a police inspector, stated that these individuals were terrorists. And a subsequent letter from another government official referred to them as terrorists. These were individuals that were not perceived and were not presented by the petitioner to the immigration judge as part of the government. And so that is why the agency and the IJ analyzed the case in such a way that these were private actors. And when looking at that fact, where the Nepali Army came to her rescue, clearly showing that the petitioner could not demonstrate based on her experiences that the government of Nepal was unwilling, unable to protect her. And so the agency addressed the claim that was presented to it. I think that's where the 2007 Human Rights Report was submitted on appeal because of realizing the failure on their part to meet that necessary burden. And just to quickly address the 2017 issue with the report, that aspect of the immigration judge's decision was actually solely focused on a well-founded fear claim, which the petitioner did not actually press before the IJ or the board, and additionally abandoned in their opening brief by not raising any challenge to it. So that even if we were to note that would be an error of any sort, that wasn't relevant to the crux of their claim, which was their past experiences being the basis for relief here. And so that does not impact that in any way. And I think that is the crux of the case. I think that basically sums up the case. Are there any questions around that? No, that's very helpful, counsel. Thank you so much for your time. Thank you, counsel. At this time, if counsel for the petitioner wanted to use his two-minute rebuttal, please introduce yourself back on the record. Thank you. Steve Duffers for Rosie Canalsing for the rebuttal. First of all, there is no question that the persecutors are malice in this case against, in 2007, the two incidents. But that doesn't seem to address the burden of government counsel's argument. He's talking about what theory the case was tried on before the IJ. And he says that when we read the record, we're going to see that the case was not tried on a theory that the intruders in the first incident were government actors or that the kidnappers were government actors, that it was tried on the theory that these people were terrorists, as terrorists will do, terrorize the planet. I understand. Excuse me. That's completely incorrect, Your Honor, and I think a review of the record will demonstrate that. I would also mention to address your concern about whether I brought up – What is the correct understanding of the record? Excuse me? What should the correct understanding of the record be? The correct record is that they were attacked by malice. It's the testimony of a respondent, and it's in her declaration in the record. But what counsel is saying is they were attacked by malice who were private actors and that there was no indication in the record that the government at the time would not properly protect your client. Well, I just – with all due respect, I just discussed during my initial presentation that the 2008 Human Rights Report, which talked about 2007, the U.S. Department of State, talks about how the malice in the government, we're not going against malice, the malice were continuing on the street, their persecution, their attacks on people who were opposed to them. Yeah, but we're concerned with the record that was made before the IJ, and you're referring us to a report that the IJ never saw. Right, but I would also mention that there is an article that was submitted before – there is an article that was submitted by the IJ, so that was before the immigration judge from the New York Times, which talks about how the malice were in the government and were continuing with violence. So I would certainly suggest that you take a look at that. We'll read it. And just, if I may, just one quick point. Yeah, it just – that gets back to the question we asked you earlier, and that Judge Thompson just asked, which is, you're saying malice, but you're also saying private actors, not government actors. No, the part that's in my brother's brief that mentions – Ms. Singh was asked explicitly on cross-examination, you're not saying – more or less, this is verbatim – you're not saying that the malice who attacked or the people who attacked you were in the government or were government, you know, in the government. I don't have it right here, but it's in the – and she said no, but the question was as if they were government members. In other words, that they were actually, you know, elected representatives that went to her house and attacked her. So it's somewhat of an absurd argument. It's not – she admitted that there were malice that went after her. The record is replete from reports from the police, from the Nepalese Congress Party, from her testimony and her declaration that 10 to 12 malice attacked the house, and also that malice kidnapped her son. That's not an issue, but just quickly on page 22 – The point is, of course, not all malice are part of the government. Malice is a very generic term. Well, there was a civil war for about 10 years in Nepal that the malice were opposed to. The Nepalese Congress Party and my client's family were part of the family. But just quickly on page 22 and page 8 of my brief, I do bring up the issue of the human rights report from 2017. It was not appropriate in that the 2008 report should be addressed. Okay. Anyway, thank you very much. Appreciate it. Thank you. Thank you, counsel. That concludes argument in this case.